**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Docket No.: CR-07-101 |
| | ) | |
| PAUL A. MILLSTEIN | ) | |
| | ) | |

**PAUL MILLSTEIN'S MEMORANDUM IN AID OF SENTENCING**

Defendant Paul Millstein, through counsel, respectfully submits this memorandum in aid of sentencing. The sentencing hearing is scheduled for September 4, 2007.

## I. INTRODUCTION

On May 1, 2007, pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C), Mr. Millstein pleaded guilty to one count of tax evasion in violation of 26 U.S.C. § 7201. As part of the plea agreement, the government agreed that a sentence within a range of 0 to 6 months imprisonment, which corresponds to Zone A of the Sentencing Table of the Sentencing Guidelines, is the appropriate disposition in this case. The government further agreed that, should the Court sentence Mr. Millstein to a term of confinement, any such confinement shall consist solely of home detention (with work release), and not halfway house or prison. As discussed below, Mr. Millstein respectfully requests that the Court accept the plea agreement and sentence him to a term of probation without any term of confinement.

## II. BACKGROUND

### A. Nature of the Offense

Mr. Millstein pleaded guilty to one count of tax evasion for money he received in 1999. Specifically, in April and in November 1999, Mr. Millstein received checks for $25,000 and $50,000, respectively, from the settlement proceeds of a Douglas Development real estate refinancing. Both checks were drawn on the escrow account of the law firm representing Douglas Development in the transaction. On neither occasion did Mr. Millstein solicit the funds in any way. Although Mr. Millstein did not fully appreciate the tax implications of these funds at the time he received the money, he did understand at the time he filed his tax return for the year 1999 that the $75,000 could be considered income to him, but he nonetheless filed a false return that omitted those monies as income.

As stated in the Presentence Investigation Report ("PSR"), Mr. Millstein has paid back all taxes and penalties owed to the IRS in connection with this case.

### B. Mr. Millstein's family and professional background

Mr. Millstein is a 44-year-old married father of three children. He lives in Silver Spring, Maryland, with his wife of 20 years, Mary Beth. Mr. Millstein's son Tyler, who is 17 years old, recently graduated from Paint Branch High School in Burtonsville, Maryland, the same school from which his father graduated. Tyler will be attending Wesley University in Delaware this fall, where he will be a member of the varsity football team. His two daughters, Jordyn (age 13) and Haley (age 11) live at home. Jordyn suffers from significant health issues, including juvenile diabetes and epilepsy, and as a result requires a great deal of medical care. Haley plays soccer on a local "travel" team that plays games around the D.C. Metropolitan region.

Mr. Millstein grew up in the same neighborhood he lives in today. Upon graduating from the University of Maryland in 1986, he joined his brother in a small, family run construction firm. While working on a job in Maryland, he caught the eye of a nearby landlord who was in the process of remodeling a store he owned. That man was Douglas Jemal. Mr. Jemal was so impressed with Mr. Millstein's industriousness and attitude, he walked up to him and hired Mr. Millstein on the spot to do a small job. That in turn led to a full time job offer, and Mr. Millstein has now been employed by Douglas Development for 17 years. He began by doing small construction remodeling jobs for the Company. For the first ten years of his employment at Douglas Development, Mr. Millstein worked seven days a week and took virtually no vacation. As the Company became more successful, so did Mr. Millstein, and in time he rose to his current position as Vice President of Construction. Mr. Millstein has been and continues to be the sole source of income for his family.

## III. SENTENCING ISSUES

### A. The Plea Agreement

The Plea Agreement presented to the Court was entered into pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C), which provides that the government may "agree that a specific sentence or sentencing range is the appropriate disposition of the case," and that this agreement "binds the court once the court accepts the plea agreement." The agreement in this case provides for a sentencing range of 0 to 6 months imprisonment, and that any period of imprisonment shall be in home detention, with work release. Essentially, the Plea Agreement allows the parties to argue for a sentence of (1) straight probation, terms of which could include conditions such as community service; (2) a split sentence of probation and a period of imprisonment, the later to be served in home

detention; or (3) a sentence of up to 6 months imprisonment without probation, the term of imprisonment to be served in home detention. For the reasons set forth below, Mr. Millstein respectfully requests that the Court accept the Rule 11(c)(1)(C) plea and sentence him to probation without any period of confinement.

B. Sentencing Factors:

Even before the Supreme Court's decision in United States v. Booker, 543 U.S. 220 (2005), which made the Sentencing Guidelines advisory, rather than mandatory, Courts in this jurisdiction were free to impose a sentence outside the applicable guidelines range in 11(c)(1)(C) pleas. United States v. Goodall, 236 F.3d 700 (D.C. Cir. 2001).[1] Instead, the Court must take into account the factors listed in 18 U.S.C. § 3553(a) to determine a sentence that is "sufficient, but not greater than necessary" to satisfy the goals set forth in the statute. The factors that the Court must consider include: the nature of the offense; the history and characteristics of the defendant; the need for the sentence to promote policies underlying the criminal statutes; affording deterrence to others; protecting the public from further crimes by the defendant; and providing the defendant with needed medical care. Each of these § 3553 factors weighs in favor of a straight probationary sentence for Mr. Millstein.

1. The nature of the offense supports a probationary sentence and does not warrant a term of home detention

Mr. Millstein readily acknowledges that tax evasion is a serious offense and, through his guilty plea, he has accepted full responsibility for his conduct. The offense at

[1] The PSR calculates a total Guidelines Offense Level of 9, which corresponds to a Zone B sentence range of 4 to 10 months imprisonment. The 11(c)(1)(C) Plea Agreement, which provides for a sentencing range of 0 to 6 months imprisonment, corresponds to a Guidelines calculation of 8, a one level departure.

issue in this case, however, occurred in 1999. Since that time, Mr. Millstein has paid all back taxes and penalties owed to the IRS in connection with this case. He has also hired experienced accounting professionals to assist him in preparing his tax returns in the future.

2. Mr. Millstein's personal and family characteristics weigh in favor of a probationary sentence without a period of home detention

Attached to this Memorandum are several letters written to the Court in support of Mr. Millstein. Exhibit 1. Also attached is a CD containing a video clip of the 2007 Paint Branch High School Spring Sports Awards Ceremony at which Mr. Millstein was honored for contributions he made to the school's athletic department. Exhibit 2. These letters and video clip tell the story of a man who devotes substantial time and resources to his community. They speak of the selfless acts performed by Mr. Millstein to better the lives of his neighbors, his community, and most significantly, of children. The letters also speak to the love and devotion that Mr. Millstein shows to his own family and the fact that charity in the Millstein home is a family affair. One representative example is the letter from Robin Hart, the parent of Mr. Millstein's son's friend. Ms. Hart wrote:

> I have seen [Mr. Millstein] give of himself over and over again for the good of our community. Paul helped construct our high school press box. He spends countless hours on field prep for baseball and football programs. He has donated video equipment to our high school sports programs. Recently, when Montgomery Country Public Schools restricted our gym use, Paul single handedly revamped an unused parking garage so our kids (boys and girls) could keep playing during foul weather. He has donated money, the use of his home and more importantly *his time* over and over again for the benefit of our children. And when he gives, it's a family affair. Paul's daughters (who aren't yet in high school) and son, are often seen volunteering right along side their father and mother. Paul's influence on their development as productive, involved community members is immeasurable.

In light of Mr. Millstein's character and his proven desire to help others, we respectfully submit that the interests of justice would be best served by allowing him to continue to perform these acts of community service rather than being confined to home detention.

i. *Jordyn's Health Issues*

Mr. Millstein's 13-year-old daughter Jordyn suffers from epilepsy, Type 1 diabetes, and Attention-Deficient Hyperactivity Disorder ("ADHD"). See PSR at ¶ 32. Jordyn has numerous doctors' and therapy appointments every month. The family has struggled to find the right combination of medications that will not offset the effects of one another. Mr. Millstein and his wife Mary Beth each spend a lot of time with Jordyn, making sure she is getting the right foods, the right medications, and enough exercise to help manage her diabetes. Jordyn currently wears a 24-hour blood glucose monitoring sensor, which will alert her when her blood sugar levels are not in the proper balance. Exercise is a crucial part of her treatment. Jordyn enjoys horseback riding, and she competes in horse shows. Because Jordyn enjoys riding, she does not associate it with her diabetes or that it is an effort to control her blood sugar levels.

Mr. Millstein is essential to Jordyn's riding program. The horse shows in which she competes are on the weekends, and it is Mr. Millstein who transports her horse to the various locations around the state where the competitions are located. This is not only because it gives Mr. Millstein an opportunity to spend time with his daughter, but it is because of the simple fact that the act of transporting the horse, which includes hitching and unhitching the horse trailer, involves a certain amount of strength. Simply put, if Mr. Millstein is sentenced to a period of home detention, Jordyn would likely not be able to participate in riding competitions for that time period.

*ii.* *Family Activities*

The Millstein family is very active and Mr. Millstein has always been integrally involved in his children's sporting activities. Along with Jordyn's horseback riding, Mr. Millstein has helped coach his children's sports teams, helps take them to practice, and attends as many of their games as possible. What this means is that Mr. Millstein's weekends are generally devoted to helping and supporting his children's sport activities, whether it is taking Jordyn to a horse show on one side of the state, taking Haley to a soccer game 50 miles away, or lining the football field before one of Tyler's games. Obviously, Mr. Millstein will be unable to do any of this if he were to be sentenced to home detention.

Additionally, his son Tyler will be playing varsity football on a college team this fall, and Mr. Millstein plans on attending as many of his games as possible. Again, this will be impossible if Mr. Millstein were sentenced to a period of home confinement. And the point here is not that missing his children's activities will be painful to Mr. Millstein, which it most certainly will be; rather, its that it will be painful to his family. Not only would it create logistical burdens for Mrs. Millstein, but, more importantly, it would deprive his children of his support and active participation in their lives.

3. A probationary sentence will reflect the seriousness of the offense, promote respect for the law, provide just punishment, and afford adequate deterrence to others

Following the sentence in this case, Mr. Millstein will be a convicted felon for the rest of his life. The stigma and loss of rights associated with a felony conviction will reflect the seriousness of the offense and promote respect for the law. It would, moreover, provide adequate deterrence to other similarly-situated professionals for whom a felony conviction would be life altering. See, e.g., United States v. Myers, 353 F.

Supp. 2d 1026, 1031 (S.D. Iowa 2005) (sentencing defendant to time served rather than Guidelines range of 20 to 30 months, stating that being branded a felon and being known as such by family, friends, and society is "no small punishment"). Because of this case and his guilty plea, Mr. Millstein has experienced shame in his community and his family life has been upended. We submit that a period of home confinement for Mr. Millstein is unnecessary and will not further the sentencing goals set forth in § 3553.

4. Mr. Millstein is not a likely recidivist

The evidence before this Court strongly suggests that Mr. Millstein is not a likely recidivist from whom the public must be protected through a term of home confinement. To the contrary, Mr. Millstein's actions illustrate that he is contrite and he has taken affirmative steps to remedy his mistake by repaying all the money, along with all penalties, that he owed. Additionally, not only has Mr. Millstein hired experienced professionals to assist him with his personal taxes, but Douglas Development has instituted significant internal reforms to ensure that the conduct that brings Mr. Millstein before the Court is never repeated.

5. Mr. Millstein could best continue medical treatment if he is not confined to home detention

Section 3553 states that courts "shall consider . . . the need for the sentence imposed . . . to provide the defendant with needed . . . medical care in the most efficient manner." 18 U.S.C. § 3553(a)(2)(D); see also United States v. Price, 409 F.3d 436 at 446 (citing United States v. Booker, 543 US 220 at 260) (listing needed medical care as one of the factors to consider when sentencing). As indicated in the PSR, Mr. Millstein suffers from debilitating migraine headaches. Several years ago, while he underwent tests to find the cause of the migraines, doctors discovered a colloid cyst in the third

ventricle of his brain. Although the cyst is not malignant at this time, Mr. Millstein is required to have regular tests and have his doctor monitor the size and location of the cyst regularly. Exhibit 3.

Along with his doctors, Mr. Millstein has been working over the last several years to find the right medications to control the pain caused by his migraines. Although the pain is improving, Mr. Millstein's ability to detect the onset of a migraine and care for it immediately is crucial. He tries to resist using the strongest class of narcotics to control his pain due to the risk of becoming dependant on the medications. Although he tries to go back to work after a migraine, he often is out for the rest of the day and unable to function for 7-8 hours during a migraine. While his condition does not require constant medical attention, it does require flexibility; Mr. Millstein sometimes needs to get medical attention on an immediate, emergency basis. Such flexibility will be very difficult to achieve if Mr. Millstein is confined to home detention.

## IV. CONCLUSION

For the reasons stated above, defendant Paul Millstein respectfully requests that the Court accept the 11(c)(1)(C) plea agreement he entered into with the government in this case and sentence him to a term of probation without any period of confinement.

Date: August 13, 2007

Respectfully submitted,

/s/

Whitney C. Ellerman (Bar No. 420486)
HUNTON & WILLIAMS LLP
1900 K Street, N.W.
Washington, DC 20006
(202) 955-1500

Henry F. Schuelke, III (Bar No. 91579)
JANIS, SCHUELKE & WECHSLER
1728 Massachusetts Ave, N.W.
Washington, D.C. 20036
(202) 861-0600

ATTORNEYS FOR PAUL MILLSTEIN

**CERTIFICATE OF SERVICE**

I hereby certify that on August 13, 2007, I caused Paul Millstein's Memorandum In Aid Of Sentencing to be served electronically pursuant to the Court's ECF system on counsel of record, and emailed the same to Assistant United States Attorney Mark Dubester, and United States Probation Officer Tennille Losch.

/s/
Whitney C. Ellerman

Robin Hart

14200 Old Columbia Pike
Burtonsville, Maryland 20866
301-384-5078
Rhart63@comcast.net

July 12, 2007

The Honorable Ricardo M. Urbina
United States District Court for the District of Columbia
333 Constitution Avenue
N.W., Washington, D.C. 20001

Dear Judge Urbina,

I write to Your Honor today on behalf of Paul Millstein, a valued member of my community. Your Honor will be imposing a sentence on Mr. Millstein in the near future; and I ask that while doing so, Your Honor consider the important contributions Mr. Millstein brings to my community.

I suppose those closer into the city might only see Mr. Millstein as a VP of a very large construction firm. But to those of us at home in Burtonsville, Paul is a loving father, faithful husband, friendly neighbor, trusted friend and *invaluable member of our community.*

I have known Paul for approximately ten years. I met him when our sons became baseball teammates. During that time I have seen him give of himself over and over again for the good of our community. Paul helped construct our high school press box. He spends countless hours on field prep for baseball and football programs. He has donated video equipment to our high school sports programs. Recently, when Montgomery County Public Schools restricted our gym use; Paul single handedly revamped an unused parking garage so our kids (boys and girls) could keep playing during foul weather. He has donated money, the use of his home and more importantly *his time* over and over again for the benefit of our children. And when he gives, it's a family affair. Paul's daughters (who aren't yet in high school) and son, are often seen volunteering right along side their father and mother. Paul's influence on their development as productive, involved community members is immeasurable. We have a saying in our community when we need something done. It's "Call Millstein. If he can't do it, he'll know someone who can."

On a personal note, Paul has helped our family in ways he isn't even aware of. My oldest son is now entering his third year in college. His first two years have been very rough. He's had his own problems with the law. Just the mention that he was home for the summer looking for employment and Paul was on the phone finding an opening as an electrician's helper. My son loves his job and has been working harder than I thought he could. It may sound dramatic, but this job has turned my son's life around. He has a purpose; he's making his own money and more importantly, he absolutely loves his work. He will be changing his major in the fall to Electrical Engineering. He came home this summer confused, depressed, lost and wanting to quit college. He will be heading back in the fall with new drive and a reason for being in school. I can't thank Paul enough.

Your Honor, I'm not completely familiar with the plea reached in this case nor am I familiar with the impending consequences. I am aware that incarceration is an option. Please know that the examples I have given only pertain to my experiences with Paul. There is an entire community who would tell similar stories. Paul's family, his friends and his community would suffer without him. While truly dangerous people roam our streets, it seems incredibly unjust to incarcerate a valued member of our community. If the purpose of imposing a sentence is to repay a debt to society; in my opinion, Paul pays that debt willingly every day.

With gratitude for Your Honor's consideration,

Robin Hart

July 7, 2007

The Honorable Ricardo M. Urbina
United States District Court for the District of Columbia,
333 Constitution Avenue, N.W.
Washington, D.C. 20001

RE: Paul Millstein

Dear Judge Urbina,

I am fully aware of the charge and plea pending for Paul Millstein. I understand the seriousness and consequence of the charge.

I have known Paul Millstein for over 10 years. Paul has been valued friend and an exceptional volunteer in serving our local community. Specifically, Paul served as the Vice President of the Paint Branch High School Football Parents Club (I was and still am the President). He was an Assistant Coach on a highly competitive select youth baseball team (while I was the Head Coach). In addition to sports organizations, we have jointly worked on many projects at the local high school and in the community to help ensure the safety, opportunity, competitiveness, and enjoyment of the citizens of our neighborhood.

Despite the mixed capacities of our relationship, please accept my review of key characteristics of Paul and examples of his accomplishments. The list of benefits to the local school plus community sports programs has depth and scope.

**Paul is a rare person who is charitable with his personal money and exceeds financial contribution with donation of his time and expertise for community service.** For example, Paul:

- Helped organize the registration, equipment, and transportation plus supply food/beverage for our school team for football tournaments in Frederick, MD in 2005 and to Charlottesville, VA in 2006 (when school administrators and team coaches cannot participate).
- Was instrumental in arranging – on very short notice – accommodations, transportation, and other logistics for our youth baseball team travel to Cooperstown, NY in 2003 and to Tulsa, OK in 2005 to compete in national playoff tournaments.
- Established a watering system on the high school football and baseball fields plus constructed a multi-person drinking water station for the football team.
- Provided landscaping services for the football and baseball fields – including aeration of the grounds, seeding, and fertilizing. He also arranged gravel for warning track and materials for common areas to not only make the field look better but provide extra safety for players and convenience for spectators.
- Built indoor and outdoor batting cages for the school baseball team.

**Paul behaves as a very fair-minded, honest, and trustworthy person who has a great rapport with people of all ages and backgrounds.** He is willing to help many others – many with whom he or his family has no connection or relationship. Most notably, Paul:

- In 2006 organized and managed the construction of a railing on top of the high school stadium press box. Not only did this increase the capacity and comfort of those coaches and parent volunteers who run the game but most significantly provided greatly improved safety for all.
- Arranged for donations to cover uniform costs for the high school and community baseball, football, and basketball teams (notable because no one in his family played basketball nor had any association to the basketball team).
- From 2002-2006 his company donated and he managed building space provided to coaches who used the space to develop a top baseball training facility – a facility that previously did not exist in the community and helped our young players train and stay competitive with others in the county and state. Most of those players have no idea who Paul Millstein is.
- In 2007, on extremely short notice and when use of public buildings for sports in Montgomery County was severely curtailed, he organized construction of an indoor baseball facility for use by all community youth groups.

In all of the above examples, Paul will not take credit or reimbursement for his generosity and expects only that those effected give back in their own ways.

**Personally, I find Paul to be a very committed, loyal, and devoted friend, father and husband to his wife and three children.** I have witnessed him:

- Strike a healthy balance between work and family commitments despite a rigorous work schedule.
- Fly or drive home at late hours from tournaments, games, and practices in order not to miss a soccer game, horseback riding competition, important school meeting, a child's doctor's appointment, and other family activities.
- Maintain an active support in school groups to support all his children.
- On two separate occasions he persuaded an overbooked, closed practice doctor to see my son for immediate treatment of an injury.

These are just some of the best character traits and accomplishments by Paul Millstein. Thank you for the consideration.

Sincerely,

Paul Barnes
National Sales Manager
HunterLab
11491 Sunset Hills Road
Reston, VA 20190

President
Paint Branch HS Football Parents Club




Paint Branch High School

*Academy of Science and Media*
14121 Old Columbia Pike
Burtonsville, Maryland 20866-1799
Main Office: 301-989-5600 • Facsimile: 301-989-5609
www.mcps.k12.md.us/schools/paintbranchhs

*National Blue Ribbon School of Excellence • New American High School • Northeast Consortium School*

July 5, 2007

The Honorable Ricardo M. Urbina
United States District Court for the District of Columbia
333 Constitution Avenue, N.W.
Washington, D.C. 20006

Honorable Ricardo M. Urbina,

It is my honor to write a letter on behalf of Paul Millstein, a major supporter of the Paint Branch High School Athletic Department and a personal friend, who has plead guilty to a single count of tax evasion. I have been fortunate to know Paul in many realms of life and his character and loyalty are both second to none.

I first met Paul 4 years ago when his son, Tyler enrolled at Paint Branch High School as a freshman in our football program. I was just beginning my tenure as athletic director here at Paint Branch. I was overwhelmed trying to get ready for the start of the school year. At an early summer football practice, Paul introduced himself to me and expressed interest in volunteering his time and resources to our school. At the time, I could not have imagined how much a single person could assist in the success of an athletic program. I expressed to Paul a desire to install new goalposts on the stadium field, paint our facility, and remove weeds and growth from our surrounding fences. He told me that he would assist in making sure these tasks were complete before the first football game. Paul led the effort to improve our facility and provided not only financial donations, but more importantly, his time.

Over the past four years, Paul has consistently come through when the athletic department has needed assistance. Our baseball and softball batting cages were falling apart. Paul arranged to have them repaired and dramatically improved by adding a concrete floor and new netting. We also needed sodding and aeration of our stadium playing field and our practice field. Paul made a donation to take care of these improvements and dedicated his time to make sure they were completed. In addition, Paul has re-painted our stadium scoreboard, repaired an unsafe press-box, installed goalposts on our football practice field, and even offered his house for the athletic staff to use during a state athletic directors conference in Ocean City. At our spring awards ceremony this past May, I presented Paul with a special award and plaque for all that he has done for the Paint Branch Athletic Department over the past four years. Paul is a true Panther and he bleeds our school colors, burgundy and gold.



Paint Branch High School
*Academy of Science and Media*
14121 Old Columbia Pike
Burtonsville, Maryland 20866-1799
Main Office: 301-989-5600 • Facsimile: 301-989-5609
www.mcps.k12.md.us/schools/paintbranchhs



*National Blue Ribbon School of Excellence • New American High School • Northeast Consortium School*

I have also been fortunate to watch Paul as a father of his 3 wonderful children. He is such an inspiration to his son Tyler and his two daughters Jordan and Hailey. Despite a busy work schedule, Paul is always seen not just watching games, but filming games for our coaches. This is a huge help to our coaching staff. He is able to sacrifice just sitting back, relaxing and enjoying the game to focus on providing a quality film for our coaches to use later as a teaching tool. He is quick to be there for his daughters as well as they are involved in their schools and on their horse farm. Paul and Mary Beth have a very special family and it is apparent that he is a strong positive role model in the lives of his children.

As a friend, Paul has been someone who is always there for me. He is extremely loyal and has a strong character that you would want in a close friend. I have always admired Paul for his desire to help others in all realms of life. He is so involved in the community and helping others, including his friends. Paul doesn't expect anything in return for his actions. When offered a "thank you," he replies "no problem, I'm so glad to help" or "anything for you!"

It is my understanding that, as part of Paul's sentencing, community service might be ordered. I would welcome this sentence for Paul because this is an area where Paul can truly make a difference in the Burtonsville community and at Paint Branch High School. The Paint Branch Athletic Department would welcome Paul Millstein as a volunteer to assist us in many aspects of the department.

As you consider the sentencing of Paul Millstein, I hope you that you will consider his character, accomplishments, and dedication to helping others.

Sincerely,

Jeff Sullivan
Athletic Director
Paint Branch High School
301-674-1743




July 5, 2007

THE HONORABLE RICARDO M URBINA
UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA
333 CONSTITUTION AVENUE NW
WASHINGTON DC 20001

Dear Judge Urbina:

I am writing to ask you to impose a lenient sentence on Paul Millstein. In the seven years that I have represented the Shaw neighborhood as an elected Advisory Neighborhood Commissioner, Mr. Millstein has consistently demonstrated his trustworthiness, selflessness, and community spirit in his dealings with my constituents, community stakeholders, and myself.

I first met Mr. Millstein in early 2001, when I asked if his employer, Douglas Development, could assist in transporting mulch that was left over at the end of the annual Washington Home and Garden Show at the Washington Convention Center to locations in Shaw, where the public could use it for treebox, public space, and private garden improvement projects. Mr. Millstein, a vice president at Douglas Development, was my point of contact, but he became much more than that. He personally made the arrangements for the heavy equipment, including front end loaders, dumptrucks, and dumpsters, and the manpower needed in order to remove, transport, and deliver the hundreds of cubic feet of mulch involved. Mr. Millstein spent a full day personally ensuring the operation was successful. And it was: nearly two dozen locations throughout greater Shaw had large mulch piles available, which were used to dramatically improve the appearance of many blocks through volunteer efforts the following weekend.

This particular event has since been repeated annually, with Mr. Millstein's personal involvement every year. Mr. Millstein could certainly assign a subordinate to handle these arrangements and oversee the project each year, but he continues to be hands-on, taking a full day out of his busy schedule to make sure this important activity goes off without a hitch.

1519 8TH STREET, NW, WASHINGTON, DC 20001-3205 • 202-518-3794
E-MAIL: PADROANC2C@AOL.COM • WEBSITE: WWW.MEMBERS.AOL.COM/PADROANC2C

Since then, Mr. Millstein has served a two-year term on the Board of Directors of Shaw Main Streets, the neighborhood's commercial revitalization and historic preservation organization, and currently serves on the non-profit's Advisory Board. During his term on the board, Mr. Millstein was not only the top fundraiser, but his commitments of time included hands-on support of the annual Keep Shaw Beautiful Day event, where he personally picked up donated trees and plants from suburban nurseries in his pickup truck, brought them to the neighborhood, and worked with volunteers to dig holes and put them in the ground, among other activities.

Mr. Millstein has consistently made time in his busy schedule to attend community association meetings, even when conflicting professional and family commitments or personal health issues would have made it easy for him to decline. At these meetings, he has always demonstrated a willingness to help, not merely by having Douglas Development financially support programs and events, but by asking how he could help personally, and then doing what he promised to do.

I believe that Shaw is not the only neighborhood where Mr. Millstein has made the types of personal efforts that cause residents and stakeholders alike treat him like part of their community, but that these demonstrations of hands-on leadership are repeated wherever Mr. Millstein encounters such opportunities in his personal and professional lives.

Despite the fact that he does not live in the neighborhood, Paul Millstein is a part of our community. He is a volunteer in many of the events and activities that make our neighborhood great, and a friend to all who know him.

I hope that you will see fit to grant Mr. Millstein a lenient sentence. If community service is a part of that sentence, I would be pleased to suggest opportunities for such service to be performed in Shaw.

Please let me know if you have any questions about my opinion of Mr. Millstein and my plea for leniency in his sentencing.

Sincerely,

Alexander M. Padro
Commissioner, ANC 2C01

**Excerpt from DVD**
**of**
**Paint Branch High School Awards Ceremony**
**May 21, 2007**

This last award goes to a parent who will probably choose not to get recognized tonight because that's what he's done for the last four years — just been very much behind the scenes. Paul Millstein, if you would come up to the stage please.

I took a walk around the back of the campus a couple of weeks ago. I started in the stadium and just looked around and noticed all the things that Paul has been instrumental in improving here on this campus, and I continued to walk around through all the fields, and Paul, from day one, coming into Paint Branch, is a Paint Branch friend and has a lot of love for the school. For start, the stadium — the field needed to be irrigated. It was done. We wanted to put the college goal post in. He said, what can I do to make it happen? The score board was fading. We got it painted. The baseball and softball batting cages — many of you don't remember — used to be just dirt. When it rained, they were — we couldn't use them. Now they're full of concrete and stone dust and set the best batting cages in the county second to none. Field hockey field, overused, dirt, needed some grass on it. He was there. Recently, down at the A.D. conference, myself and the assistants needed a place to stay so we weren't homeless for a weekend. He offered up his house for us. Paul has just done a lot for the department behind the scenes, and I wanted to take this time as Tyler is graduating this year just to recognize him.

RIDERWOOD VILLAGE®
MEDICAL CENTER

6/29/07

TO WHOM IT MAY CONCERN:

MR. PAUL MILLSTEIN HAS BEEN UNDER MY CARE FOR 10 YEARS. MR. MILLSTEIN SUFFERS FROM SEVERE STATUS MIGRAINE HEADACHES CAUSING DISABLING PAIN AND TRANSIENT COGNITIVE AND MEMORY IMPAIRMENT. HIS MIGRAINES ARE FURTHER COMPLICATED BY AN INTRACRANIAL COLLOID CYST WHICH IS STABLE BUT REQUIRES ANNUAL FOLLOW UP.
MR. MILLSTEIN REQUIRES MULTIPLE MEDICATIONS TO CONTROL HIS DISEASE PROCESS. IF THERE ARE FURTHER QUESTIONS, PLEASE CALL ME—

[signature]

MARK PARKHURST MD

3110 GRACEFIELD ROAD SILVER SPRING, MARYLAND 20904 301-572-8340 FAX: 301-572-8403

