**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | **Crim. No. 07-101 (RMU)** |
| | : | |
| PAUL A. MILLSTEIN | : | |

### GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING

The United States, through its attorney, the United States Attorney for the District of Columbia, respectfully submits this Memorandum in Aid of Sentencing.

The defendant has pleaded guilty to tax evasion for calendar year 1999. The facts adduced at the plea revealed that in that year, the defendant received two checks totaling $75,000 (in the amounts of $25,000 and $50,000) from his employer. These checks were drawn and paid from an escrow account maintained by his employer's real estate attorneys. The funds in the escrow account consisted of loan proceeds of his employer obtained in connection with the refinancing of certain properties. The distribution of $75,000 to the defendant – an amount greater than his actual reported salary for 1999 – was not accounted for in the company books. Further, the distribution of income in this fashion to Mr. Millstein was not reported in Mr. Millstein's Form W-2, nor was it reported by Mr. Millstein in the 1999 federal income tax return he filed in 2000.[1] Mr. Millstein knew and recognized (and admitted at the time of the plea) that the $75,000 was taxable income – not a loan or any other non-taxable event.

Furthermore, the defendant did not deposit these checks into his personal account. Rather, he negotiated both of the checks at First Union Bank (where the attorneys maintained the

---

[1]    Mr. Brownell also received $10,000 from one of these distributions – a fact he Mr. Brownell acknowledged in his plea as constituting tax evasion. Mr. Esherick also received $10,000 from one of these distributions.

escrow account on which the checks were drawn) and used the proceeds to purchase several

cashiers checks in the range of $8,000 to $9,000. He deposited some of the cashiers checks into

personal accounts and used other of the checks to pay personal credit card debts. The money

deposited into his accounts, therefore, had virtually no information as to the true source of the

funds, and, indeed, some of the funds bypassed his personal accounts altogether.

The Probation Officer calculated the defendant's Guideline Level at Level 9 in Zone B,

providing a sentence in the range of 4 to 10 months.[2]

The Government and the defendant, through the plea agreement, have jointly requested

the Court accept a plea agreement under Rule 11(c)(1)(C) of the Federal Rules of Criminal

Procedure that would provide for sentencing in Zone A of the Guidelines, or 0 to 6 months

(effectively one level lower than the level calculated by the Probation Department).

The reasons for the request involve numerous considerations by both parties. Among

other factors, the Government has considered the particular value in reaching closure on this and

related prosecutions and has taken into account the governmental and judicial resources that are

saved by this agreement. The Government has also considered that this agreement has spared

numerous witnesses the burdens of a second round of testimony. The Government thus urges the

Court to conclude that there are "justifiable reasons" to accept the plea agreement. See

Guidelines, §6B1.2(b)(2).

In considering the sentence to be imposed, the Government stresses the serious nature of

---

[2]    The Court may also impose home detention or halfway house for the minimum
portion of the sentence. Section 5C1.1(c) of the Guidelines provides: "If the applicable
guideline range is in Zone B of the Sentencing Table, the minimum term may be satisfied by –
(3) a sentence of probation that includes a condition or combination of conditions that substitute
intermittent confinement, community confinement, or home detention for imprisonment ***."

-2-

the conduct at issue.  Mr. Millstein is privileged in every respect -- he grew up in a good household with a good background.  He graduated from college.  He has enjoyed opportunities that this country offers and has become a wealthy man.  And yet he intentionally evaded taxes. At the time he did so, he would have reasonably calculated that his chances of being caught were near zero.   Some punishment is thus required

Under Title 18, United States Code, Section 3553(a),  "[t]he court, in determining the particular sentence to be imposed, shall consider – *** (2) the need for the sentence imposed – *** (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; [and] (B) to afford adequate deterrence to criminal conduct[.]" As to the first of the considerations, tax evasion is, in essence, a form of theft, and this ground alone is sufficient to warrant punishment.  As to the second, the need for deterrence is particularly appropriate in the tax evasion context.  The tax system in this country, at bottom, depends on voluntary compliance.  If the only real consequence upon being caught were the need to pay amounts owed with interest and penalties, a (dishonest) taxpayer, calculating the long odds of being caught and contemplating those consequences, could rationally decide that evading taxes was a sound financial strategy, where the certain rewards totally dwarfed the unlikely and insignificant risks.  Such a calculation changes dramatically if the consequences of conviction are pronounced and significant.  Indeed, courts have frequently noted the particular importance of deterrence in fashioning a sentence for tax evasion.  See, e.g., United States v. Harvey, 2007 WL 1092914 (3rd Cir., Apr. 12, 2007) (describing sentencing proceedings as follows:  "At the sentencing hearing, the District Court first noted the seriousness of the offense of income tax evasion, noting that the government depends on honest and voluntary compliance of the tax laws

-3-

by its citizens.  As such, punishment for tax evasion is necessary to further the goal of

deterrence."); United States v. Burgos, 276 F.3d 1284, 1290 at n. 6 (11th Cir. 2001) (discussing

purposes of sentencing, specifically noting that "[f]or a judge sentencing a defendant convicted

of tax evasion, the chief concern may be general deterrence ***.")  Moreover, in light of the

resources of this particular defendant, the repayment of what he owes in the way of tax debts

arising from the events of prosecution  – a truly minimal step considering the crime involved tax

evasion – is hardly entitled to significant weight.

      Accordingly, consistent with the plea agreement in this case, the Government requests a

meaningful term of home detention and, as a term of probation, a meaningful term of community

service.

      WHEREFORE, the Government requests the Court consider this pleading in imposing

sentence.

                        Respectfully submitted,

                        JEFFREY A. TAYLOR
                        UNITED STATES ATTORNEY


By:           /s/
                        Mark H. Dubester, D.C. Bar No. 339655
                        Assistant United States Attorneys
                        555 4th Street, NW,  Room 5917
                        Washington, D.C. 20530
                        (202) 514-7986